In the Matter of ELIZABETH BALI, Appellant, v BOARD OF EDUCATION OF THE UTICA CITY SCHOOL DISTRICT et al., Respondents.

Fourth Department, June 1, 1979

APPEARANCES OF COUNSEL

*Bernard F. Ashe (Susan Topper* of counsel), for appellant.

*Kenneth P. Ray, P. C. (Anthony J. La Fache* and *Robert Cassalia* of counsel), for respondents.

## OPINION OF THE COURT

HANCOCK, JR., J.

Petitioner-appellant's article 78 proceeding presents a novel legal question: whether a board of education may lawfully suspend a permanently certified, tenured teacher without pay pending the determination of Education Law (§ 3020-a) disciplinary proceedings arising from the teacher's failure to obtain certification in her assigned teaching area.

Petitioner had been continuously employed by the respondent Utica School District since September 1, 1969 as a teacher assigned to special education—mentally handicapped. On September 1, 1972, after satisfactorily completing her three-year probationary period, she was approved for tenure.

During the entire period of her service with the district, petitioner was in possession of a permanent teaching certificate issued by the State Education Department in the certification area of "Nursery, Kindergarten and Grades 1-6". Although informed that in order to keep her position she would be required to obtain certification in her assigned teaching area (special education) by September 1, 1975, petitioner failed to do so. For this reason charges were brought against her under section 3020-a of the Education Law and she was suspended without pay.

■ Based on our analysis of *Matter of Jerry v Board of Educ.* (35 NY2d 534) and *Matter of Meliti v Nyquist* (41 NY2d 183) we hold that the board lacked authority to suspend petitioner without pay.

In *Matter of Jerry v Board of Educ. (supra),* the Court of Appeals established the rule that absent a grant of specific authority by the Legislature a board of education cannot legally suspend a teacher without pay while proceedings under section 3020-a of the Education Law are pending. In *Jerry,* which involved charges that the petitioner had been guilty of conduct unbecoming a teacher, the court stated: "There being no constitutional impediment * * * to a statutory grant of explicit authority to withhold pay pending final determination of section 3020-a proceedings * * * *we leave it to legislative*

*determination, if the Legislature be so minded, to grant specifically defined authority to withhold compensation during suspension.* Accordingly we hold that the Board of Education * * * [had no] authority to withhold compensation during the period of suspension of the teacher involved." *(Matter of Jerry v Board of Educ., supra,* p 543; emphasis added.)

*Matter of Meliti v Nyquist* (41 NY2d 183, *supra)* involved a teacher suspended without pay on charges based on his lack of *any* teaching certification. The Court of Appeals distinguished *Jerry (supra),* holding that "in the case of an uncertified teacher there is a quite specific statutory prohibition against payment during suspension" *(Matter of Meliti v Nyquist, supra,* p 188). It found the required statutory prohibition in subdivision 2 of section 3001 and subdivision 1 of section 3009 of the Education Law which make it unlawful for a school board to employ an unqualified teacher and in section 3010 of the Education Law which prescribes that a school board member who "applies, or directs, or consents to the application of, any district money to the payment of an unqualified teacher's salary, thereby commits a *misdemeanor"* (emphasis added).

The prohibition against the employment of unqualified teachers giving rise to the criminal sanction against board members in section 3010 of the Education Law is set forth in section 3001 of the Education Law ("Qualifications of teachers") which states in part:

"No person shall be employed or authorized to teach in the public schools of the state who is: * * *

"2. Not in possession of a teacher's certificate issued under the authority of this chapter or a diploma issued on the completion of a course in a state college for teachers or state teachers college of this state."

Because petitioner was "in possession of a teacher's certificate issued under the authority of this chapter" (i.e., by the State Education Department), she was "qualified" under section 3001 of the Education Law and her employment was not prohibited by statute. Thus, the unique factor that the court found in *Meliti (supra)* (i.e., the specific statutory prohibition of hiring unqualified teachers) which removed the case from the general rule against suspension without pay announced in *Jerry* is missing. The general rule established in *Jerry* must, therefore, govern.

Respondents' argument that petitioner was unqualified and

that, therefore, her employment was prohibited under section 3001 of the Education Law (even though she possessed a "teacher's certificate issued under the authority of this chapter") because she was not certified in her specific teaching area defies the plain meaning of the statute. The natural and obvious meaning of "teacher's certificate" is just that: a teacher's certificate issued by the State of New York—without regard to whether it is in a specific area. (See McKinney's Cons Laws of NY, Book 1, Statutes, § 94.)

That the Legislature's purpose in enacting sections 3001, 3009 and 3010 of the Education Law was to prohibit the employment of persons in teaching positions who lacked minimum general qualifications as teachers (without regard to qualifications in specific teaching areas) is evident from the fact that it has set forth the two requirements for "qualification" under section 3001 of the Education Law in the disjunctive: a teaching certificate or a State teachers college diploma. Thus, for purposes of qualification under the statute, a teaching certificate has been equated with what can only be a requirement of qualification in the general area of teaching and not in any specific area: i.e., the possession of a "diploma issued on the completion of a course in a state college for teachers or state teachers college of this state." (Education Law, § 3001, subd 2.)

Furthermore, the adoption of respondents' interpretation of the term "qualification" in section 3001 of the Education Law would mean that a school board member could be prosecuted under section 3010 of the Education Law for hiring a teacher who was fully certified although not in a specific teaching area[1] but not prosecuted for hiring a teacher who possessed no certificate at all but only a State normal school diploma—an absurd result which clearly the Legislature could not have intended. (See McKinney's Cons Laws of NY, Book 1, Statutes, § 145.)

Petitioner's suspension without pay, therefore, was unlawful

---

1. It is difficult to believe, in any event, that the Legislature could have intended under section 3010 of the Education Law to make school board members criminally liable for retaining in the employ of the school district a fully qualified and tenured teacher, such as petitioner, who had not obtained certification in her specific teaching area within the prescribed time limit. The strong considerations of public policy against the hiring of completely unqualified persons to teach in the public schools which underlie the prohibition against the hiring of such persons contained in section 3001 of the Education Law and the criminal sanction in section 3010 of the Education Law are not applicable in such a case.

and she was entitled to her salary and other economic benefits pending the determination of the charges.

■ In her article 78 proceeding, petitioner also asserts that respondents have unlawfully refused to appoint her in violation of her seniority and tenure rights to a full-time teaching position in what she maintains is her tenure area: elementary education (for which she is certified). Special Term has dismissed her petition on the merits without a hearing, finding on the documents and affidavits as a matter of law that petitioner had been granted tenure in the special education tenure area and not in the elementary teaching area.[2] This was error. The conflicting affidavits and ambiguous documents present questions of fact which required a hearing.

There is no question that special education has long been a *permissible* separate tenure area. (See *Matter of Boykin,* 15 Ed Dept Rep 348; 8 NYCRR 30.8 [a] [7], eff April 1, 1976, formally approving the established practice of treating special education as a separate tenure area.) The question here, however, is not whether the board could have created the tenure area but whether it did so.

To establish that petitioner was tenured in special education as opposed to the general elementary area, "there must be evidence that [special education] was traditionally treated as a separate and distinct tenure area by the board and that persons hired for the position were 'sufficiently alerted to the fact that in * * * taking on the duties of [special education] they were entering an entirely independent tenure area' *(Steele v Board of Educ.,* 40 NY2d 456, 463)." *(Waiters v Board of Educ.,* 46 NY2d 885, 887.)

It should be noted that there is no evidence of any board action or resolution purporting to establish special education as a tenure area. This is significant. (See *Matter of Baer v Nyquist,* 34 NY2d 291, 297, wherein the court stated: "Moreover, the school system's lack of formality in warning petitioner militates against a finding of waiver by petitioner, and illustrates the dangers inherent in *ad hoc,* decentralized tenure experimentation. The [board of education] *never adopted vertical tenure areas by formal resolution.* Rather, the exis-

---

2. Although respondents contended at Special Term that petitioner's article 78 proceeding should be dismissed as premature for her failure to exhaust administrative remedies, such argument is not made on appeal. Respondents seek only an affirmance of the dismissal of the petition on the merits.

tence of such a system was inferrable only from the fact that the various resolutions granting tenure described the appointments by subject matter." [Emphasis added.])

To rebut petitioner's statement that special education never existed as a separate tenure area, respondents have offered the superintendent's affidavit that special education was a separate tenure area at the time of petitioner's appointment as well as identical affidavits made by three teachers of special education containing blank spaces in which the names of the teachers and the pertinent dates were inserted. In addition, respondents rely on the reference to "mentally retarded" and "special education" in the minutes of meetings of the board of education in September, 1969 when petitioner was appointed a teacher of mentally retarded and in September, 1972 when she was granted tenure. In these same minutes, the names of other teachers being appointed to positions or granted tenure are similarly listed next to descriptions of their particular teaching assignments: e.g., "7th grade English", "1st grade" and "Kindergarten"—subjects for which no permissible separate tenure area has ever existed. Contrary to respondents' assertion and Special Term's conclusion, it can be inferred that the listing of "mentally retarded" and "special education" opposite petitioner's name was intended to be a description not of a tenure area but only of her teaching assignment. (See *Baer v Nyquist, supra,* p 297.) By the same token, the letters written by the board of education to teachers in 1974 and 1975 notifying them of appointment to tenure in special education, while proof, perhaps, that special education existed as a separate tenure area in those years, do not prove that it was so on September 1, 1972 when petitioner was appointed. Indeed, it can be argued that the letters establish that the board customarily sent notification letters to teachers being appointed in special tenure areas and that the absence of such a letter in the case of petitioner is proof that she was not so appointed.

Inasmuch as there are unresolved factual questions pertaining to the establishment of special education as a separate and distinct tenure area and, if it was so established, whether petitioner had been alerted to that fact, a hearing should be held pursuant to CPLR 7804 (subd [g]).

The judgment should be reversed and the matter remitted to Special Term for further proceedings and the petition granted to the extent of restoring petitioner's pay and other

economic benefits pending ultimate determination of the charges under section 3020-a of the Education Law.

Simons, J. (dissenting in part). I agree that a hearing is required to determine petitioner's tenure area, but in my view, the respondent properly suspended petitioner without pay.

As a general rule, when a board of education institutes proceedings under section 3020-a of the Education Law to terminate a tenured teacher's services, it may not suspend the teacher without pay pending the outcome of the proceedings *(Matter of Jerry v Board of Educ.,* 35 NY2d 534). It may do so, however, if the teacher is not certified, for lacking certification the teacher is not qualified and the board may not employ an unqualified teacher *(Matter of Meliti v Nyquist,* 41 NY2d 183, 187-188; see Education Law, §§ 3001, 3009, 3010).

The majority hold that petitioner is qualified because she is certified in the area of Nursery, Kindergarten and Grades 1-6. That is not the area in which she was hired to teach however. She was hired to teach mentally retarded children and respondent has unsuccessfully urged her to become qualified to do so by obtaining her certification. It makes little sense to me to find that petitioner was unqualified for purposes of teaching the subject she was hired to teach but "qualified" for purposes of drawing her pay while she was suspended from teaching.

The majority reason that a teacher may be qualified under section 3001 (and thus avoid running afoul of the holding of *Meliti)* in one of two ways: (1) by earning a diploma from a teacher's college or (2) by possessing a teacher's certificate. I agree; but it does not follow that a teacher's certificate in *any* subject meets the test of qualification. Indeed, quite the opposite is true for a teacher certificate permits instruction only in the specific area of certification (see 8 NYCRR 80.2 [1], [m]). It does not signify the teacher possesses any general competence to teach. A teacher without a certificate in the subject assigned to her, in effect, possesses no certificate at all and the lack of certification is conclusive on the issue of incompetence *(Matter of Linton v Board of Educ.,* 47 NY2d —, decided April 24, 1979; *Matter of Amos v Board of Educ.,* 54 AD2d 297, 301-302, affd 43 NY2d 706).

Accordingly, I would affirm Special Term insofar as it permitted suspension without pay pending disposition of the section 3020-a charges.

CALLAHAN and WITMER, JJ., concur with HANCOCK, JR., J.; CARDAMONE, J. P., and SIMONS, J., dissent in part in an opinion by SIMONS, J.

Judgment reversed, with costs, and matter remitted to Special Term for further proceedings.