THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM PERRY COLLINS, Respondent.

Fourth Department, February 20, 1980

APPEARANCES OF COUNSEL

*John T. Ward, District Attorney (Albert W. Foley* and *Steven Foyer* of counsel), for appellant.

*Clarence H. Snyder* for respondent.

**OPINION OF THE COURT**

HANCOCK, JR., J.

■ ■ A procedural question in this appeal concerns the propriety of reserving decision on defendant's motion for a mistrial made during the trial and, after a guilty verdict has been returned, granting the motion on the ground originally urged and on additional grounds. For reasons to be discussed, we are of the opinion that such practice is unauthorized[1] and hold that the order herein which purports to direct a new trial as a result of a postverdict mistrial motion cannot stand. Alternatively, if the posttrial motion be viewed as one to set aside a verdict pursuant to CPL 330.30, we find insufficient basis in the record to support the court's order.

Following the prosecutor's jury summation in the trial on charges of assault in the first degree (Penal Law, § 120.10), defendant's counsel moved for a mistrial upon the ground that the prosecutor had improperly commented upon defendant's failure to come forth with his alibi defense when first questioned by police, citing *People v Smoot* (59 AD2d 898). The court reserved decision and submitted the case to the jury which, after deliberation, returned a verdict of guilty of assault in the second degree (Penal Law, § 120.05). Immediately after the verdict defense counsel moved "to set aside the verdict", again referring to the allegedly improper remark made during summation and to *People v Smoot (supra).* The court adjourned the matter to give counsel an opportunity to make the request in "a formal writing". There is no record of any such written request. Two weeks later, however, the court heard oral argument on what defense counsel characterized as a motion for a mistrial. Defendant advanced the same arguments for the mistrial that he had during the trial and, in addition, contended that the prosecutor's summation had been inflammatory and had contained reference to matters not in the record. After hearing counsel and reviewing briefs, the court granted the motion for a mistrial in a formal decision,

---

1. As stated hereinafter (see pp 435, 436, *infra)* there is no authority for such practice in the Criminal Procedure Law and, although there are reported decisions indicating that the practice has occasionally been followed, we have found no decision in which the propriety of reserving decision on a mistrial motion until after the verdict is discussed (see, e.g., *People v Banks,* 59 AD2d 649, reversing as an abuse of discretion an order setting aside a verdict and granting a new trial based on a renewed motion for mistrial).

set aside the verdict, and ordered a new trial. The People appeal and we reverse.

The charge against the defendant stems from the stabbing on October 15, 1977 of Suzanne McGuire, a student at the State University College at Fredonia. The assault, which resulted in serious injuries to Ms. McGuire, occurred on the campus grounds at approximately 2:50 A.M. McGuire, who had been walking on Ring Road to her campus residence after spending a short time at a downtown Fredonia bar, noticed a reddish pickup truck with light colored stripes and yellow lights on top pass her twice. On the second occasion, McGuire observed the driver's face. The truck pulled into the Ring Road parking lot, which was full, and a short time later a man emerged from the lot. After following McGuire for a short distance the man approached her and asked for a match. McGuire replied that she had no match and continued walking. The man then jumped on her from behind and stabbed her several times. Another Fredonia student, Sam Di Pasquale, who had passed McGuire earlier on Ring Road, heard her screaming and ran to her. Di Pasquale had also seen the reddish pick-up truck with yellow lights and light stripes which had gone down Ring Road. The police arrived and McGuire was rushed to the hospital.

Shortly thereafter the police picked up the defendant, whose truck fit the description of the truck seen by McGuire and Di Pasquale, and took him to the police station and later, at his request, to the Brooks Memorial Hospital so that he could place himself in front of the victim and prove that he was not the assailant. McGuire testified at the trial that she had recognized the defendant at the hospital, and a nurse attending her stated that when McGuire observed the defendant, her eyes grew large and she appeared frightened. McGuire, at the trial, positively identified the defendant as her assailant.

Kenneth Weidenborner, the director of security at Fredonia State, testified on cross-examination by defense counsel that, at the police station after defendant's arrest, he had asked defendant if he had been on campus at the time of the incident. Defendant replied that he had been there, "just riding around on the campus." Captain Weidenborner testified to this admission again on redirect examination, and a third time on re-redirect examination over defense counsel's objection concerning the scope of the prosecutor's line of questioning.

At trial, defendant denied both the stabbing and being on the Fredonia campus at the time of the stabbing. His alibi was that at the time of the incident (2:50 A.M.) he had been conversing with Mr. Vincent Bomasuto at the scene of a fire on Central Avenue near the Dunkirk-Fredonia Plaza. He claimed that he had arrived at the fire at approximately 2:25-2:30 A.M., talked with Bomasuto for approximately one-half hour, and that he and Bomasuto had left the fire and had gone to a restaurant at approximately 3:00 A.M.

Bomasuto, called by the defense, stated that defendant had parked his truck next to Bomasuto's car. He added that at the fire he had also seen William Ott who called out: "Hi, Bomber". Ott testified for the People in rebuttal that he had yelled to Bomasuto and had spoken with him for about five minutes as Bomasuto was leaving. He denied that he had seen either defendant or his truck at the scene of the fire.

In its memorandum decision granting defendant's motion for a mistrial, the court characterized the proof against defendant as "not overwhelming",[2] and held that what it then concluded had been the erroneous admission of Captain Weidenborner's testimony concerning defendant's statement that he was "just riding around on the campus"[3] together with the cumulative effect of the prosecutor's "improper and inflammatory summation" had deprived defendant of a fair trial. In particular the court found that the prosecutor had erred on summation by "vouching for the truth of the victim" and expressing his opinion of the defendant's credibility, and by making improper comment on "the failure of the defendant to disclose an alibi witness, or to account for his time to the police upon questioning."

Before turning to the merits we observe that it is far from clear whether the court's order was the result of a postverdict

2. Defendant made no motion for a trial order of dismissal for insufficient evidence pursuant to CPL 290.10 at either the "conclusion of the people's case" or "at the conclusion of all the evidence" (CPL 290.10). Nor does defendant raise on appeal any question as to the sufficiency of the evidence against him. In reversing, we hold that, despite the trial court's finding that the "proof was not overwhelming", the evidence was sufficient both to submit the case to the jury and to support the guilty verdict.

3. The court's reasons that Captain Weidenborner's testimony should not have been permitted were that no CPL 710.30 notice of intent to use the admission was ever served on defense counsel and that Weidenborner's testimony at the *Wade-Huntley* suppression hearing conflicted with his trial testimony. As noted, the only objection by defense counsel to Weidenborner's testimony was on re-redirect and then for the reason that it went beyond the scope of the re-cross-examination.

mistrial motion or of a motion to set aside the verdict pursuant to CPL 330.30. Although the court's written decision and order refer to the motion as a renewal of the mistrial motion made during the trial at the close of the People's summation, we note that defense counsel's application immediately following the verdict was "to set aside the verdict on the ground that the error made in the district attorney's summation was of sufficient severity as to * * * have influenced this jury * * * to the prejudice of this defendant."

As pointed out, the court, in hearing counsel on the renewal of the mistrial motion, permitted arguments beyond the single objection based on *People v Smoot* (59 AD2d 898, *supra)* voiced by the defense during trial. Further, in its written decision, the court recited several grounds for granting the motion that had not been mentioned during the trial. Thus, there are indications in the record that the court may, in fact, have treated the application as a "motion to set aside the verdict" pursuant to CPL 330.30. Accordingly, in reviewing the order declaring the mistrial we shall consider it to have been made either pursuant to CPL 280.10 or 330.30.

 If indeed the court, as indicated in the written decision, did intend to grant a mistrial after the verdict, it acted beyond its authority, and for that reason the order must be reversed. A mistrial motion is authorized at "any time *during the trial"* (CPL 280.10; emphasis added). Because the very purpose of the motion is the "discharge of a jury prior to its retirement for deliberation" (Denzer, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 280.10, p 520), it seems obvious that it was never intended that the motion under CPL 280.10 could be made after the jury had rendered its verdict. Under CPL 280.10 the court, "at any time during the trial", must declare a mistrial and order a new trial upon motion of the defendant "when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives him of a fair trial." What constitutes an error or legal defect in the proceedings or conduct which is so prejudicial as to persuade the court that "a fair and impartial determination cannot be reached" *(People v Mordino,* 58 AD2d 197, 205) and that the trial must, therefore, be aborted and the jury excused, is a determination which the Trial Judge must make in his sole discretion based on the arguments made at the time of the motion and upon his familiarity with

the proceedings and his observation of the events in the courtroom. It is clear that the "trial judge is vested with a broad discretion in ruling on the issue of prejudice in such a situation" *(People v Genovese,* 10 NY2d 478, 482) and that, in a practical sense, that discretion is virtually unlimited because an appeal by the People from an order granting a mistrial is not authorized (see CPL 450.20) and such an order is, in any event, by its very nature unappealable.

It does not seem possible that the Legislature intended that a Trial Judge could utilize the almost unlimited discretion vested in him to declare a mistrial under CPL 280.10 at any point in the trial after the verdict. That the Legislature did not so intend is evidenced not only by the words of the statute indicating that the motion is to be made "at any time during the trial" but by the Legislature's inclusion in the Criminal Procedure Law of a section dealing specifically with motions to set aside a verdict "at any time after rendition of a verdict" (CPL 330.30). It should be noted that the court's power to set aside a verdict under CPL 330.30, unlike the broad discretion to order a mistrial under CPL 280.10, is circumscribed and (aside from the special circumstances covered by subdivisions 2 and 3) limited to grounds "which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court" (CPL 330.30, subd 1).

To hold that in addition to its authority to set aside a verdict for the specific reasons granted in CPL 330.30 a Trial Judge is also empowered to annul the jury verdict by using the broad powers granted under CPL 280.10 would nullify the limitations on the court's powers under CPL 330.30 and make that section superfluous—an anomaly that the Legislature could not have intended and a construction of the Criminal Procedure Law which must be avoided (see McKinney's Cons Laws of NY, Book 1, Statutes, § 145; *Matter of Bali v Board of Educ.,* 68 AD2d 360, 363, app dsmd 48 NY2d 630).

We hold, therefore, that a declaration of a mistrial after the verdict is unauthorized. Nor is it permissible for the court to order a mistrial after the guilty verdict, as was done here, as a purported renewal of the motion made during the trial or as a motion on which decision has been reserved. The Criminal Procedure Law contains no authority for such practice, and the vice of giving the defendant a chance for an acquittal with the guarantee of a new trial in case he is convicted is appar-

ent, particularly where, as here, the defendant on argument of the reserved or renewed motion is permitted to argue points which were not raised during the trial.[4]

It is possible, alternatively, that the court considered the matter as a motion to set aside the verdict under CPL 330.30 and that, in vacating the verdict, it was intending to exercise the more limited authority granted by that section. If so, the order must be reversed. The court, as we have noted, upon an application by the defendant under CPL 330.30, may set aside a verdict only when there appears in the record, a ground "which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court" (CPL 330.30, subd 1).[5] (See *People v Dorta,* 56 AD2d 607, app dsmd 44 NY2d 930; *People v Zipfel,* 51 AD2d 979.)

We find no basis for setting aside the verdict in the prosecutor's summation. The argument concerning defendant's failure to state that he had been at the scene of the fire at the time of the stabbing was not an impermissible comment on the defendant's exercise of his right to remain silent (see *People v Conyers,* 49 NY2d 174) but a fair comment on the inconsistency between the defendant's statement to the police that he had been "just riding around on the campus" (elicited by his own counsel on cross-examination of the police witness) and his alibi testimony on the trial.

Moreover, the prosecutor's remarks to the effect that Bomasuto's testimony was concocted, or a recent fabrication, while perhaps overzealous, do not warrant a reversal. The remarks were in the form of arguments on the evidence preceded by: "I suggest to you," or "I further submit to you," or "I submit" and were not expressions of the prosecutor's personal opinions

---

4. We note that in moving for a mistrial at the conclusion of the People's summation, defense counsel did not request that the jury be discharged. There is the suggestion, at least, that he anticipated an acquittal from the jury and that he was making the motion solely for the record in the expectation that the court would reserve decision and permit him to renew it in the event of a conviction. Defense counsel stated: "I feel this jury is going to acquit the defendant, but I feel, for the purpose of the record, and * * * of the law, that I have to make it, and for the protection of the defendant, I have to make this motion at this time." Whether intended or not, the practice followed resulted in an unfair advantage to the defendant by giving him the legal equivalent of a "free shot", i.e., one which he may count as official if he is acquitted but may take over if he is convicted.

5. Subdivisions 2 and 3 of CPL 330.30 are not applicable. Subdivision 2 pertains to improper conduct of a juror; and subdivision 3 to newly discovered evidence.

concerning credibility of the witness (cf. *People v Shanis,* 36 NY2d 697, 699; *People v Keller,* 67 AD2d 153, 158-160; *People v Manson,* 63 AD2d 686). There was no implication in the questioning of Bomasuto or in the summation that Bomasuto had any duty to come forward with his information to the police or the District Attorney (see *People v Knox,* 71 AD2d 41, 48-49; cf. *People v Keller, supra,* pp 161-162).

There was no reason for the court to conclude in its decision that it should have excluded Captain Weidenborner's testimony concerning defendant's statement that he had been "just riding around on the campus." The statement was first elicited from the witness on cross-examination by defense counsel.[6] The defendant clearly had no ground for objecting to it later for lack of notice under CPL 710.30. None of the other grounds urged by respondent in support of the court's order "would require a reversal or modification of the judgment as a matter of law by an appellate court" (CPL 330.30, subd 1).

Accordingly, the order should be reversed, the verdict reinstated, and the matter remitted for sentencing.

CARDAMONE, J. P., SIMONS, SCHNEPP and WITMER, JJ., concur.

Order unanimously reversed, verdict reinstated and matter remitted to Chautauqua County Court for sentencing.

---

**6.** The cross-examination by defendant's counsel was as follows:

"BY MR. SNYDER:

"Q. Do you recall any other conversation during this particular time, with Mr. Collins?

"THE COURT: Or anything else he said.

"THE WITNESS: I do. As I recall, I do believe I asked him if he was on the campus, at that particular time, and he said, yes, and I said, 'What were you doing on the campus?' He said, 'I was just riding around on the campus.' I do recall that conversation.

"MR. FOLEY: I assume that stays in, your Honor?

"MR. SNYDER: That says *[sic]* in. I have no objection to that."