■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent-Appellant, v SOLOMON BROWN and ANTHONY PRICE, Respondents, and JOSEPH PERRY, Appellant-Respondent. — Appeal by the People from an order of the Supreme Court, Kings County (Moskowitz, J.), dated September 24, 1980, which, upon defendants' motion, (1) vacated jury verdicts convicting defendants Price, Perry and

Brown of attempted robbery in the first degree, and substituted therefor verdicts convicting them of attempted robbery in the second degree, and (2) vacated the jury's verdict convicting defendant Brown of criminal possession of a weapon in the fourth degree. Defendant Perry appeals from a judgment of the same court, rendered March 10, 1980, convicting him, upon the substituted verdict, of attempted robbery in the second degree, and imposing sentence. ¶ Order reversed, on the law and the facts, motion denied and the defendants' convictions of attempted robbery in the first degree, and defendant Brown's conviction of criminal possession of a weapon in the fourth degree reinstated. Judgments modified accordingly and matter remitted to the Supreme Court, Kings County, for resentencing as to each defendant. ¶ By Kings County indictment Number 2648/79, Solomon Brown, Joseph Perry and Anthony Price were accused of committing the crimes of attempted robbery in the first degree, attempted robbery in the second degree, and criminal possession of a weapon in the fourth degree. The charges stemmed from an incident in which defendants, acting in concert, were alleged to have attempted to forcibly steal property from Irene Mikol, and in the course of the commission of the crimes, and of immediate flight therefrom, the defendants used and threatened the use of a dangerous instrument. A trial ensued, after which a jury found defendants guilty of attempted robbery in the first degree; defendant Brown was also found guilty of criminal possession of a weapon in the fourth degree. Defendants Perry and Price were acquitted of the latter charge. Pursuant to CPL 330.30 (subd 1), the court *sua sponte* reduced the attempted robbery in the first degree convictions to attempted robbery in the second degree, and vacated defendant Brown's conviction for possession of a weapon (103 Misc 2d 871, 872). The People appeal from this order (see CPL 450.20, subd 3); and defendant Perry appeals from the judgment convicting him of attempted robbery in the second degree. ¶ The evidence at trial in relevant part established that on July 21, 1979, at approximately 5:00 A.M., while passengers on the Manhattan bound "J" train, Irene Mikol, the complainant, and her husband, Stanley, were accosted by three "youths", later identified as the defendants. On the seat next to the Mikols were their suitcase and garment bag. ¶ The boys stood approximately one to one and one-half feet from the Mikols. The complainant testified that the shortest one, defendant Price, said in a very loud voice, "[g]ive me your bag", which was on her lap. She was "quite startled" and said "[p]lease go away. Leave me alone. Go away." Defendants Perry and Brown said in unison, "[g]ive him the bag". ¶ The tallest boy, defendant Brown, held a stick, which the complainant described as "kind of a used bat. It was a broom-stick type of bat." Mr. Mikol described it as a stickball bat. Initially, Brown's hands were folded across his chest and the stick, which was held upright, was in his right hand. After the complainant was told to give her handbag to Perry, Brown moved the stick, which had been at face level, down in an overhead and forward motion. The stick "was descending in [the complainant's] direction". Mr. Mikol "jumped up", as the stick "was * * * coming down", to protect himself, yelled for the police, and the defendants backed away and went into another car. Neither the complainant nor her husband was struck, nor did they hear defendants threaten to strike them. However, "[w]hen [the complainant] saw the stick descending, [she] was [afraid], annoyed, and upset". She did not know whether the stick "was going to come crashing down on [her]". Similarly, Mr. Mikol testified that he did not know whether "the stick was going to strike [him]". ¶ A third witness, Mario Reveron, who was also a passenger and observed the incident from an approximate distance of 20 feet, testified that the tallest boy held the stick at waist level and raised it over his shoulder when the complainant refused to surrender her bag. Reveron also testified that he heard Brown tell the complainant to

give her bag to Price or he would hit her with the stick. ¶ Defendants were subsequently arrested on the train for attempting to rob the complainant. A stick, which was recovered at the time of the arrest, was identified by the complainant as the one used by Brown. That stick was admitted into evidence at trial. ¶ At the close of the People's case, defendants moved to dismiss the count charging attempted robbery in the first degree, arguing that the evidence was insufficient to establish that they used the stick or that it was a dangerous instrument. They also argued that "at best", the People's evidence "demonstrates [a] menacing". With regard to the count charging criminal possession of a weapon in the fourth degree, defendants argued that because the People failed to establish that the stick was a dangerous instrument, that count, too, had to be dismissed. The motions were denied. After the close of evidence, defendants moved for a trial order of dismissal, alleging that the People "have not proved beyond a reasonable doubt as a matter of law" the crimes charged. The court denied this motion as well. ¶ As previously indicated, guilty verdicts were returned by the jury. At the time of sentencing the defendants orally moved, pursuant to CPL 330.30 (subd 1) for an order setting aside the verdicts. The grounds stated were that the verdicts were repugnant, that the People failed to prove guilt beyond a reasonable doubt, and that the verdicts were against the weight of the evidence. The motion was granted, not on the grounds asserted by the defendants, but because, in the court's view, "the evidence adduced at the trial was insufficient to establish that the stick possessed by the defendant was 'readily capable of causing death or other serious physical injury' (CPL [sic] 10.00, subd 13)." (103 Misc 2d 871, 872, supra.) ¶ The prosecutor objected to the order on the ground that "I was not given the statutory notices that I am entitled to under the law * * * I don't believe it's the Court's roll [sic] in this case to decide what type of motion the defense counsel should or should not make. I believe the Court exceded [sic] its roll [sic] because the particular motion was not made at anytime." The court acknowledged that "the defense did not raise that particular issue", but added that, "it is my belief * * * that this verdict, if I were to allow it to stand, would be modified by the Appellate Division in the way I have modified it, and I have done this. Although the attorneys have made their motions, I don't think I am bound by their wording and I must set it aside in the same language that they have asked me to". ¶ CPL 330.40 (subd 1) provides that, "A motion to set aside a verdict based upon a ground specified in subdivision one of section 330.30 [as in the case at bar] need not be in writing, *but the people must be given reasonable notice* thereof and an opportunity to appear in opposition thereto" (emphasis added). ¶ The clear language of this section of the CPL was not followed in the case at bar. When the prosecutor appeared at sentencing he had no notice that an application would be made to set aside the verdict on the grounds asserted by defendants or on the ground upon which the court modified and vacated the verdicts. The fact that defendants moved at the close of the People's case to dismiss on the ground, *inter alia,* that the evidence was insufficient to establish that the stick was a dangerous instrument is of no legal significance in the context of this case since that motion was summarily denied by the court. ¶ With regard to the merits, we conclude that, under the circumstances at bar, the evidence was sufficient to support the jury's conclusion that the stick was a dangerous instrument (see Penal Law, § 10.00, subd 13). ¶ Subdivision 13 of section 10.00 of the Penal Law in relevant part defines a dangerous instrument as "any instrument, article, or substance * * * which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury". ¶ In *People v Carter* (53 NY2d 113, 116), the Court of Appeals explained that "[t]he statute makes no attempt to give an absolute definition of

the term or to provide a list of items which can be considered dangerous instruments. Instead the statute states plainly that any 'instrument, article or substance', no matter how innocuous it may appear to be when used for its legitimate purpose, *becomes* a dangerous instrument when it is *used* in a manner which renders it readily capable of causing serious physical injury * * * The object itself need not be inherently dangerous. It is the temporary use rather than the inherent vice of the object which brings it within the purview of the statute." ¶ Under this "use-oriented approach" (*People v Carter, supra,* p 116), courts have held, for example, that under the circumstances in which they were used, a common handkerchief (see *People v Cwikla,* 60 AD2d 40, revd on other grounds 46 NY2d 434), a baseball bat (see *People v Ozarowski,* 38 NY2d 481), and rubber boots (see *People v Carter, supra*) were dangerous instruments. ¶ In the case at bar, the evidence established that, during the course of an attempted robbery, the complainant was accosted at close range by three young males, one of whom, the tallest, was holding a stick described as a "broom-stick type of bat" or a stickball bat. The complainant was twice told to surrender her handbag, after which the youth holding the stick brought it down "in an overhead and forward motion [in the complainant's direction]". We conclude that this evidence was sufficient to support the jury's finding that the stick was readily capable of causing serious physical injury in the way in which its use was threatened (cf. *People v Ozarowski, supra,* p 491, n 3). ¶ *People v Castaldo* (72 AD2d 568), relied upon by the trial court, does not conflict with our holding in the case at bar. In *Castaldo,* we held that the evidence was insufficient to establish that an unloaded sawed-off rifle, which was brandished by the defendant, was a dangerous instrument within the meaning of subdivision 13 of section 10.00 of the Penal Law. We explained that the rifle "was unloaded *and no attempt or threat was made to use the gun as a club.* The capacity of the sawed-off rifle to inflict death or serious injury was not established in this case" (emphasis added). Here, the threat to use the stickball bat as a weapon was implicit in Brown's conduct (cf. *People v Woods,* 41 NY2d 279). ¶ We have reviewed the remaining contentions, including those raised in connection with defendant Perry's appeal, and find them to be without merit. Mollen, P. J., Titone, O'Connor and Niehoff, JJ., concur.