■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v
ALBERTO GUERRERO, Respondent. — Appeal by the People from
an order of the Supreme Court, Kings County (Fuchs, J.), dated
June 1, 1982, which granted defendant's motion pursuant to
CPL 330.30 (1) to set aside a jury verdict and ordered a new
trial.

Order affirmed, and matter remitted to Criminal Term for
further proceedings.

Defendant's conviction of the highest count of a multicount
indictment, i.e., criminal possession of a controlled substance in
the third degree, arose out of a drug bust conducted pursuant to
a search warrant at 201 Schenectady Avenue on December 17,
1980.

When the police initially entered the premises pursuant to the
search warrant, they observed defendant fleeing through a
kitchen window. He was chased and apprehended in a nearby
building and brought back to 201 Schenectady Avenue. Inside
the premises, the officers found the drugs which defendant was
convicted of possessing in a room adjoining the kitchen.

The testimony adduced at a hearing on defendant's motion to
suppress the seized contraband did not directly connect defen-
dant to the room in which the drugs were found. At the conclu-
sion of the hearing testimony, defense counsel requested that
the Assistant District Attorney stipulate "that there was no
article of clothing of the defendant's produced at the time of the
search warrant". The Assistant District Attorney advised the
court that a detective and a police officer, who were involved in
the drug bust, had told him that: "at the time they were to leave
that premises with the defendant in custody, defendant Guer-
erro [sic] did not have his coat. At a prior time, they said he did
not have his coat. They said he did not have his coat when he
jumped out the window. They asked him, 'Where's your coat,'
and he indicated with his handcuffs behind him, a motion into
the room where the drugs were found. They went over, they
picked up a coat which was there. He indicated that was his coat.
They gave him his coat so he could leave the premises and be
taken to the precinct".

The motion to suppress was thereafter denied and a jury was
immediately selected for trial.

At trial, the prosecutor, on direct examination of the detective
who was involved in the drug bust, asked the following ques-
tions and elicited the following answers:

"Q When you left 201 Schenectady Avenue to go to the 77
Precinct, *did you see the defendant Alberto Guererro [sic] also
leave that location?*

"A Yes, I did. At the point just prior to leaving, we were all basically in room number one on that chart up there.

"Q what took place inside that room?

"A This is where the defendants were putting on their shirts and jackets, getting ready to leave.

"Q And *did you see where Mr. Guererro [sic] obtained the jacket?*

"A Yes, I did.

"Q And where did *he get* a jacket?

"A He got it from a pile of jackets that was in that room, there were assorted jackets and shirts laying around there.

"Q And *where was that pile of jackets* in location to the desk, the table with the materials?

"A Basically, right behind the table, there was laying — I believe it was sort of like a bench or a chair * * *

"Q Prior to that point, had the defendant Alberto Guererro [sic] been taken into that room at any other time?

"A No, I don't believe he was, no.

"Q You then say the first time he was in that room, to your knowledge, was when he was going to leave?

"A That's correct.

"Q Did you see any officers bring in material, any articles of clothing into that room?

"A No, I didn't." (Emphasis supplied.)

On cross-examination of the detective, defense counsel asked the following questions and elicited the following answers:

"Q And then after placing Mr. Guererro [sic] under arrest, you said that there came a time where he went back into the room to get his coat?

"A Before —

"Q Or jacket?

"A Before we leaving 201 Schenectady Avenue.

"Q All right.

"A The defendant were [sic] in room number one, with police officers, we were getting ready to leave.

"Q And Alberto Guererro [sic] very conveniently walked up to pick up his jacket that was placed in room number one, is that correct?

"A Well, you just said was placed in room number one. I don't know. What do you mean —

"Q Well, did Alberto Guererro [sic] conveniently pick up a jacket that was in room number one?

"A I don't remember if he picked it up, I believe *he was asked* if he had a jacket. *He answered in the affirmative* and they held up a jacket for him, and he stated, *'It was my jacket,'* something like that." (Emphasis supplied.)

A police officer was then called by the People, and on direct examination was asked "[w]hat took place" when defendant was about to be taken to the precinct. The police officer gave the following responses:

"A Okay, just about the time we were getting ready to leave, I asked Mr. Guererro [*sic*] if he had a jacket, I informed him that it was cold outside, and he nodded yes. I said, 'Where is it?' I believe we had moved at that time into room one on your diagram up there, and there was a heater in that room, it was a little warmer, and he nodded yes, he had a jacket. I said, 'Where is it?' He motioned in the direction of the room, at which time another one of the officers was picking up coats, because we were putting them on the various different people that claimed ownership, and Mr. Guererro [*sic*] identified his coat, and it was put on him, and then we left.

"Q How did he identify that coat

"A He was asked, 'Is this your coat' and he nodded yes."

Defense counsel then moved for a mistrial arguing that the People "on several occasions, indicated both in bills of particulars and in official police documents", *inter alia*, that "no statements were ever made by this defendant", that there was "no evidence of any kind linking the defendant with the premises", and that the People were now producing "two witnesses that the defendant made a statement to the effect that this was his coat". Counsel finally argued that he was "never informed of" this statement, which he felt he should have been told about beforehand, and he was surprised by the People's evidence regarding it.

The motion for a mistrial was denied on the grounds "that defendant could have anticipated the evidence from matter [*sic*] of record at the end of a pretrial hearing held to suppress physical evidence and could have but did not request a *Huntley* hearing; that defendant's admissions had not been elicited by police interrogation, and that defendant had not objected to the testimony". However, the court precluded the Assistant District Attorney from eliciting any further testimony that "[defendant] indicated, by nod, gesture or vocal intonation, or any other means that a particular jacket, lying in the premises, was his".

After the jury rendered a verdict of guilty on the highest count of the indictment, defendant moved to set aside the verdict, *inter*

*alia,* on the ground that he had been prejudiced by the People's failure to give notice pursuant to CPL 710.30 (1), regarding his statement concerning his coat, which they intended to use at trial.

The People argued in opposition that CPL 710.30 (1) had not been violated due to the fact that (1) the statements were elicited by defense counsel on cross-examination and (2) in any event, defendant's statement regarding his coat was not the product of custodial interrogation and therefore was not subject to suppression.

Criminal Term granted the defendant's motion, thereby reversing its earlier ruling denying defendant's motion for a mistrial, and ordered a new trial.

We agree with the determination of Criminal Term.

CPL 710.30 (1), (2), (3) provide as follows:

"§ 710.30 Motion to suppress evidence; notice to defendant of intention to offer evidence.

"1. Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20 * * * they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.

"2. Such notice must be served within fifteen days after arraignment and before trial, and upon such service the defendant must be accorded reasonable opportunity to move before trial, pursuant to subdivision one of section 710.40, to suppress the specified evidence. For good cause shown, however, the court may permit the people to serve such notice thereafter and in such case it must accord the defendant reasonable opportunity thereafter to make a suppression motion.

"3. In the absence of service of notice upon a defendant as prescribed in this section, no evidence of a kind specified in subdivision one may be received against him upon trial unless he has, despite the lack of such notice, moved to suppress such evidence and such motion has been denied and the evidence thereby rendered admissible as prescribed in subdivision two of section 710.70."

The obvious purposes of this statute "is to give a defendant adequate time to prepare his case for questioning the voluntariness of a confession or admission" which the People intend to offer at trial (*People v Ross,* 21 NY2d 258, 262; *People v Greer,* 42 NY2d 170). Only upon a showing of good cause may the court

permit service of the notice during trial with a reasonable opportunity to make a suppression motion during trial (CPL 710.30 [2]) and if good cause is not shown, a failure to give the required notice of intention before trial mandates exclusion of the statement or statements (*People v Briggs,* 38 NY2d 319, 323-324; *People v Spruill,* 47 NY2d 869; *People v Iveys,* 67 AD2d 349). The People do not rely on the ground of "good cause" in arguing for reversal of the order appealed from. Rather they argue that no violation of CPL 710.30 (1) occurred in the case at bar, due to the fact that it was defense counsel who first elicited the defendant's statements through cross-examination of the detective who was a witness for the People.

Although this argument, as articulated by the People, is generally valid (*see, People v Goodson,* 57 NY2d 828), the People's attempt to apply it to the facts at bar is, to say the least, disingenuous. From the testimony at the suppression hearing and the Assistant District Attorney's stipulation at the close thereof, it was readily apparent that the only direct proof connecting the defendant to the room where the subject contraband was found was his statements concerning his coat which were made in response to police questioning while he was in custody. Moreover, defense counsel was justified in assuming at this point, due to the absence of service by the People of any notice pursuant to CPL 710.30 (1) that (1) the People, for reasons best known to themselves, had no intention of using these statements at trial, and (2) no request for a *Huntley* hearing was necessary.

Under these circumstances, the direct testimony of the detective at trial to the effect that he observed defendant simply retrieve his jacket from the room in which the drugs were located was, at best, misleading and, at worst, patently false. Of even greater significance is the fact that the detective's direct testimony on this issue compelled defense counsel to cross-examine the detective and elicit from him the truth of the matter, i.e., that defendant was asked, while in the room, whether he had a jacket, and that he responded affirmatively and pointed the jacket out. By their own misconduct, therefore, the People attempted to accomplish indirectly, what they could not do directly, i.e., introduce before the jury the defendant's admissions, which were arguably subject to suppression as the products of interrogation designed to elicit inculpatory statements from him (*see, People v Huffman,* 41 NY2d 29; *Rhode Island v Innis,* 446 US 291), without giving the requisite notice pursuant to CPL 710.30 (1) and without affording defendant a *Huntley* hearing in advance of trial to litigate the issue of voluntariness.

Nor can the People prevail on the theory that no objection was ever raised by defense counsel. A motion for a mistrial or to strike, at the conclusion of the detective's direct testimony, would have, in all probability, been denied. In any event, defense counsel preserved his objection regarding a violation of CPL 710.30 (1) for appellate review when he moved for a mistrial after the direct testimony of the police officer who had testified as to defendant's statements (*People v Guerra,* 30 AD2d 659). At this point the trial court could have stricken the testimony and instructed the jury in that regard.

Accordingly, the order appealed from should be affirmed. Mollen, P. J., Mangano and Lawrence, JJ., concur.

Titone, J., dissents and votes to reverse the order appealed from, deny defendant's motion, and reinstate the verdict, with the following memorandum:

In this case, the trial court set aside a jury verdict because the People failed to serve a notice of intention to offer a statement at trial in accordance with CPL 710.30. Although I am not persuaded that such notice was necessary (*see, People v Roopchand,* 107 AD2d 35, 37; *People v Pray,* 99 AD2d 915; *People v Webb,* 97 AD2d 779; *cf. Matter of Eddie M.,* 110 AD2d 635), that question need not be reached inasmuch as the issue was not preserved for appellate review as a question of law, a condition precedent to the grant of a motion made pursuant to CPL 330.30 (1) (*People v Carter,* 63 NY2d 530).

Defense counsel's objections, to the extent made prior to verdict, were general in nature and did not specify that there was either a failure to comply with the statutory provision or that the statement was involuntary. This is insufficient to preserve an issue of law (*People v Clark,* 41 NY2d 612, 616). A claim that the prosecution failed to give adequate notice or prove good cause for a failure to do so "is not reviewable in the absence of any objection on the ground of involuntariness to the introduction of defendant's oral statement" (*People v Travison,* 59 AD2d 404, 407, *affd* 46 NY2d 758 on opns at App Div, *cert denied* 441 US 949; *see also, People v Pray* (*supra*). Moreover, counsel must explicitly state that CPL 710.30 has not been complied with (*see, People v Clark, supra,* at p 616; *People v Rullo,* 31 NY2d 894; *People v Ross,* 21 NY2d 258; *People v Webb, supra*). When the issue is raised postverdict, it is too late (*People v Satloff,* 56 NY2d 745; Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 330.30, p 46).

The failure to preserve the issue is fatal, for a trial court may set aside a verdict pursuant to CPL 330.30 (1) only if a ground appears on the record which would warrant reversal or modification of the judgment by an appellate court "as a matter of law"

(see, People v Carter, supra; People v Collins, 72 AD2d 431, 436; People v Zipfel, 51 AD2d 979). The broader discretionary power which would be available to this court on direct appeal from a judgment of conviction (CPL 470.15) or to the trial court on a motion for a mistrial cannot be invoked to circumvent a failure to object in order to raise a question of law (CPL 470.05 [2]; see, People v Brown, 100 AD2d 879; People v Collins, supra; People v Zipfel, supra). "To hold otherwise would lend an unwarranted degree of gamesmanship to the trial process" (People v Middleton, 54 NY2d 42, 49).

Accordingly, the order appealed from should be reversed, defendant's motion denied, and the verdict reinstated.