Breitel, J.
As the aftermath to a casual pick-up acquaintanceship in a drinking bar, and a visit to another bar, defendant was convicted after a jury trial of larceny and assault upon his woman companion. She had been found, abandoned, unconscious, bloodied, and with a fractured skull, beside the gasoline pumps of a service station at 6:00 a.m. The Appellate Division modified, leaving only the assault conviction outstanding.
On appeal by defendant, the responsibility for the brutal crime is not contested; raised, among others, are issues on search and seizure and the prosecutor’s inflammatory summation to the jury. Two Justices in the Appellate Division dissented only on the ground that the prosecutor’s summation-required a new trial. The primary issue dividing this court is that of the search and seizure of defendant’s panel truck, the bloodstained vehicle in which the assault, accompanied by sexual abuse, undoubtedly occurred. Interestingly, and significantly, the issue divides the court not so much on the understanding of the highly-developed rules governing the warrantless search and seizure of property, including motor vehicles, permitted as *257 incidental to an arrest, or of incriminating evidence and contraband within the plain view of police officers. Instead, it is the characterization of the undisputed evidentiary facts surrounding the arrest of defendant and the observation, seizure and search, in that order, of his panel truck which forks the issue in this court and inevitably leads to the different consequences drawn by the majority and which would be drawn by the dissent.
The conviction should be affirmed. It was the defendant who voluntarily led the investigating police officers to his panel truck, through the glass panes of which they saw the bloodstains on the dashboard, one woman’s shoe, and a pair of glasses, confirmatory of the story told by the hospitalized victim. On the basis of the evidence open to their view, they arrested defendant then and there, placed a guard on the panel truck, and within a half hour to an hour and a half, with the aid of police technicians made a detailed search and analysis of the interior of the panel truck. The placing of the guard on the truck was the seizure of the vehicle, and the detailed search, as contrasted with the earlier consensual view of its interior and the seizure, occurred later, a delay of no legal consequence.
On January 7, 1966* the assault victim, Margaret Sullivan, went to a bar in Queens County between 8:00 and 9:00 p.m. There she met defendant and another man. At 2:00 a.m. of January 8, the three left the bar in a panel truck, dropped the other man off, and the couple drove on to a bar in Manhattan. The victim remembers returning to Queens in the truck, and that is all. At about 6:00 a.m. she was found when the gasoline station opened, clothed, but lacking one shoe. She was covered with blood and unconscious, and appeared dead to those who first observed her. Her body, particularly about the breasts, nipples, and genital area showed lacerations ánd tooth marks, with profuse bleeding. It was later determined that her skull had been fractured by a blow with a blunt object delivered with great force.
By investigation at the Queens bar the police learned of defendant’s identity and evening association with the victim. They went to defendant’s home and asked him to show them his *258 panel truck. He took them to a public garage across the street. Through the closed window of the truck the police saw a woman’s single shoe and pair of glasses, and of greatest significance, the bloodstains on the dashboard. The incriminating circle was complete.; the victim’s pick-up acquaintance was tied to the assault by the evidence in the panel truck. Defendant was immediately arrested and a police guard placed on the truck to prevent its removal or the removal of its contents. The detective returned later following the seizure with police technicians to make a detailed search and analysis of the interior of the truck and its contents. The search yielded additional incriminating evidence, including a bloodstained automobile exhaust manifold.
Unlike the legion of automobile search and seizure cases which have occasioned interest and difficulty, in this case before the police took any action with respect to the panel truck, they had seen the incriminating evidence in the truck which identified it as the scene of the bloody assault and which linked the victim’s last-known companion, the defendant, to its perpetration. The arrest followed the observation. In the cases relied on by defendant the arrest, for whatever other probable cause existed, preceded the taking of the motor vehicle and the delayed search of the vehicle yielded incriminating evidence for the first time, most often of a crime wholly unrelated to the arrest and the probable cause on which the arrest was based (e.g., Dyke v. Taylor Implement Co., 391 U. S. 216; Preston v. United States, 376 U. S. 364). It would be bootless to parse out these cases since the .sequence of events in this case makes their rules irrelevant. Because, however, of its recency, heavy reliance on it by defendant, and the peculiar delays in the search that occurred, it may be useful to comment briefly on Coolidge v. New Hampshire (403 U. S. 443).
In the Goolidge case, the seizure of the automobile at the time of Goolidge’s arrest, and while it was parked in his driveway, offered no visible circumstance that it had been used in the crime for which Goolidge was being arrested on independent probable cause. The vehicle was then taken to the police station and two days later, and up to 14 months later, the vehicle was searched and tested with highly-sophisticated techniques. No valid search warrant had ever been obtained. Obviously, this *259 was not a search and seizure incident to an arrest dispensing with the need for a warrant; the defendant was arrested in his home, and the automobile, as noted, was parked in his driveway.
A case much closer in point is Price v. United States (348 F. 2d 68 [D.C. Cir.], cert. den. 382 U. S. 888). In that case the police observed an automobile fitting a description associated with a recent burglary. It was unoccupied, but without entry police saw burglar’s tools and likely loot from the burglary on the rear seat. When the defendant approached the vehicle and entered, the police arrested him. It was held that the incriminating evidence had been seen by the police prior to and when the police arrested the defendant, and that, therefore, the later removal from the car of the evidence at the police station was quite correct, even without a search warrant. (To like effect, see Theriault v. United States, 401 F. 2d 79 [8th Cir.], cert. den. 393 U. S. 1100, where defendant was arrested in a motel room partly on the basis of incriminating evidence on plain view in his pick-up truck parked in front of the motel room before the arrest was effected; cf. United States v. Wickizer, 465 F. 2d 1154 [8th Cir.]; Walker v. Beto, 437 F. 2d 1018 [5th Cir.]; Wilson v. Porter, 361 F. 2d 412 [9th Cir.].)
It is noteworthy that in this case, the police, after the arrest of the defendant, obtained a warrant to search his home. Among other things this warrant search yielded up the assault victim’s purse with $151 in it. It is evident, then, that the police in this case were not warrant-shy, but were familiar with the rules permitting summary seizure of incriminating evidence on plain view or as incidental to an arrest.
Some of the difficulty in characterizing the operative facts in this case arises from a difference of opinion when the panel truck was seized: that is, whether it was seized at the time of the arrest, or at the later time of the detailed examination of its contents; or whether the seizure was of the truck or only of its selected contents some half hour to an hour and a half later. Of course, the bloodstains in the truck could not be seized separately from the truck, nor is it material whether after seizure the police retained possession of the whole truck.
The truck was seized when a police guard was placed over it in the public garage. The police had thus assumed control and dominion over the truck. It was no longer movable, nor was its *260 interior accessible to anyone, including the owner or his agent. If the placing of the guard were unlawful, a cause of action for the tort would lie (cf. Jacques v. Sears, Roebuck & Co., 30 N Y 2d 466, 472-473). There is, moreover, no power in the police without sufficient reason to do less than seize and yet interfere with the use and possession of property. Indeed, the Supreme Court has realistically recognized that there is no difference between placing a police guard on property or taking into full possession and removing it to premises under police control (Chambers v. Maroney, 399 U. S. 42).
Thus, in the Chambers case, it was said : “ Arguably, because of the preference for a magistrate’s judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the ‘ lesser ’ intrusion is permissible until the magistrate authorizes the ‘ greater ’. But which is the ‘ greater * and which the ‘ lesser ’ intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant.” (399 U. S., at pp. 51-52.)
In short, .the seizure of the panel truck in this case was simultaneous with the arrest of defendant and came, therefore, under one of the classic exceptions to the general requirement that otherwise reasonable searches must be on warrant obtained from a Magistrate on probable cause (e.g., Coolidge v. New Hampshire, 403 U. S. 443, 453-454, supra; Chambers v. Maroney, 399 U. S. 42, 46-49, supra). Moreover, the seizure as incident to the arrest, or independently, was justified because the police had observed in plain view, on consent of the defendant, incriminating evidence of the use of the truck as the scene of the crime and the paraphernalia relating the victim to the bloody scene.
Reaching this conclusion, it really should not be necessary to proceed to the [1]‘ delayed search ’ ’ issue. There is not and has never been any requirement that police must do all their searching at one time promptly upon seizure incidental to arrest or .upon plain view of incriminating evidence or contraband. The requirement being confused is that an unauthorized summary seizure may not be justified by a delayed search (e.g., Coolidge *261 v. New Hampshire, 403 U. S. 443, 463-464, supra). The cases are many in which there has been a delayed further search of property properly seized (compare, e.g., People v. Montgomery, 15 N Y 2d 732, with People v. Lewis, 26 N Y 2d 547, 552-553, citing the Montgomery case with approval). It is enough to cite but a few additional illustrative cases (e.g., People v. Teale, 70 Cal. 2d 497; Knotts v. State, 237 Md. 417; People v. Jeffries, 31 Ill. 2d 597).
The Teale case (70 Cal. 2d 497, supra) is particularly instructive. In that case Federal officers had arrested the defendant and seized his automobile in which he had been sitting. An immediate perfunctory search yielded a pistol on his person, and nothing .in the car. The automobile was sealed and shipped to the California authorities for close, technically-skilled examination. Such examination demonstrated that the victim had been in the automobile at the time he was shot; bloodstains and objects of clothing were found. It was held, and rather obviously it is suggested, that the car had been seized as incidental to the arrest when the defendant was arrested, and that the later examination of the car was simply a further examination of an object of evidence. The parallel to this case is marked, except that the further examination of the seized truck in this case was done at the site in the public garage while the truck was under police dominion (seizure).
Quite remarkably close to the facts here is the recent case in this court of People v. Brown (28 N Y 2d 282). There it was held by a unanimous court in an opinion by Judge Bergait that a delayed, detailed search of an automobile seized summarily in connection with an assault-robbery against a woman, was properly conducted. The more detailed search later that day yielded evidence of1 still another assault-robbery against a second woman-victim. In doing so the court distinguished between the probable cause for an arrest and the probable cause to search a vehicle seized independent of the arrest. Both kinds of probable cause were present as here. It noted the interconnection of the car, on evidence observed in the car, as the instrumentality used in committing both crimes.
Lastly, there is the matter of the trial prosecutor’s summation. Reading it as a whole it was largely argument by epithet rather than by logic. The words stressed by defendant as improper *262 are the references to defendant as a liar, an animal, a beast, that such a criminal should be removed from the streets, and that the victim sustained the serious injuries she received because she could not respond to his sexual and animalistic desires. Of course, a much stronger summation, and one more appropriate to a quasi-judicial officer as is a prosecutor, would have been to let the facts speak for themselves: defendant’s contradictory versions of the events that night, the victim’s unconsciousness after a night of drinking, the tooth marks about the breasts and genitalia, the profuse bloodstains on the victim’s body and the vehicle, the skull fractured by a gross blow, and, finally, the abandonment of the victim at the gasoline station. The epithets could add little to these stark facts and, therefore, were hardly prejudicial. This was especially so in a case which established defendant’s guilt of these acts, however the sensitive would characterize them, almost beyond any conceivable doubt, let alone a reasonable doubt. The District Attorney accepts the criticism that-the summation was improper, but, on any view, it was hardly of sufficient forcefulness to influence the jury in the light of the overwhelming evidence and the stark facts of the brutal, irrational crime committed.
This is not to say that a strong case will always excuse an improper summation. On the contrary, even a strong case may be fatally impaired by unfairness (e.g., People v. Adams, 21 N Y 2d 397, 402). The rule is that an improper summation, at least when the objectionable parts consist largely of abusive and intemperate language as here, should be assessed for its prejudicial effect, and it requires greater impropriety to produce that effect in a stronger case (see 5 Wharton’s Criminal Law and Procedure [Anderson ed.], § 2078; cf. People v. Webb, 23 A D 2d 893; People v. Fisher, 19 A D 2d 613; see, also, for the effect of unfairness generally, People v. Kingston, 8 N Y 2d 384, 387). In this case, it is at most only arguable that the prosecutor’s misconduct could have produced a greater adverse effect on the jury than did the bizarre facts of the crime, and the overwhelming evidence of culpability.
Consequently, the motion to suppress the seized evidence was properly denied, and its receipt at the trial equally proper. As for the objectionable summation, although a troublesome issue, on balance a new and useless trial is not required.
*263 Accordingly, the order of the Appellate Division should be affirmed.

 The delay in the appeal is unexplained. Defendant received a sentence on April 28, 1967 of 7% to 10 years as a second offender. The Appellate Division modified on March 31, 1969. Defendant has been released on parole.

. E.g., in People v. Brown, 28 N Y 2d 282, 285, 286, a ease- relied on by the majority, we held that a law-enforcement official could search an automobile without a warrant if he had probable cause to search. This position was clearly overruled by Coolidge v. New Hampshire, 403 U. S. 443, 464, 468, 470, 471, 479. (See, also, Cash v. Williams, 455 F. 2d 1227; Harless v. Turner, 456 F. 2d 1337, 1338.)