THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
DANIEL TRAVISON, Appellant.

Third Department, December 1, 1977

## APPEARANCES OF COUNSEL

*Michael J. Cunningham* for appellant.

*Pierce H. Russell, District Attorney (Ira Mendleson, III,* of counsel), for respondent.

## OPINION OF THE COURT

MAHONEY, J.

This is an appeal from a judgment of the County Court of Rensselaer County, entered January 6, 1977, upon a verdict convicting defendant of sexual abuse in the first degree (Penal Law, § 130.65).*

The facts are simple. During the early evening of August 23, 1974, the complainant, a 16-year-old girl, voluntarily entered defendant's automobile in the City of Albany and was driven across the Hudson River to the County of Rensselaer and, then, to an isolated spot where, according to complainant, defendant took certain sexual liberties after threatening her with a knife and tying her hands and feet. The defendant denied using a knife and tying complainant and, further, testified that the encounter was initiated by complainant who made suggestive comments and gestures while they were riding in the car. In support of his position, defendant testified that he gave complainant a dime to call her parents after he had driven her to the Rensselaer Railroad Station after the events described above and, further, that complainant wrote her name, room number and telephone number, on a piece of paper and gave it to defendant. The complainant admitted that defendant gave her the coin to call home and the paper containing the information recited above which was received into evidence and not rebutted.

The defendant contends (1) that the prosecution's cross-examination of him concerning four other incidents similar to the sexual abuse count of the indictment constituted reversible error, (2) that the court's refusal to suppress complainant's in-court identification was error, (3) that a certain oral statement was improperly admitted in evidence, (4) that it was error not to suppress a certain pretrial written statement, (5) that the People failed to prove "forcible compulsion" beyond a reasonable doubt and (6) that he should not have been sentenced as a second offender.

---

* The court granted a trial order of dismissal of Count No. 1 of the indictment (Penal Law, § 135.20 [kidnapping in the second degree]) and the jury acquitted defendant of Count No. 3 of the indictment (Penal Law, § 120.00 [assault in the third degree]).

Contentions (2) through (6) may be disposed of readily and serially.

■ Since the complainant had made two out-of-court photographic identifications and a lineup identification of defendant, defendant moved to suppress complainant's in-court identification on the ground that such identification was necessarily "tainted" by the out-of-court procedures. This contention must be rejected. Even if we were to concede that the lineup identification was violative of defendant's right of due process because it improperly suggested to complainant that she had chosen the "right" man at the two prior photographic identifications, the fact that complainant had ample opportunity to observe the defendant at the time of the sexual assault gives to her in-court identification that degree of invulnerability needed to establish that such identification had a sufficient basis independent of and untainted by the illegal lineup *(People v Ramos,* 42 NY2d 834; *People v Kruk,* 52 AD2d 969).

■ The People must give a defendant pretrial notice of their intention to use statements specified in CPL 710.30 (subd 1), or prove "good cause" for failure to give such notice. However, the People's failure to do either herein is not reviewable in the absence of any objection on the ground of involuntariness to the introduction of defendant's oral statement (CPL 470.05, subd 2; 470.15, subd 1), and there is no sound reason why we should consider this point raised for the first time on appeal (CPL 470.15, subd 3, par [c]; subd 6, par [a]; see *People v Musolino,* 54 AD2d 22).

■ Next, the defendant's contention that his written statement should have been suppressed on the ground of involuntariness *(People v Huntley,* 15 NY2d 72) is without merit. While the record suggests that the police made some implied threats, it is equally clear from the record that the *Miranda* warnings were given before questioning and defendant made a valid waiver of his right to remain silent and his right to the advice of an attorney.

■ "Forcible compulsion" is defined (Penal Law, § 130.00, subd 8) as "[P]hysical force that overcomes earnest resistance; or a *threat,* express or implied, that places a person in fear of immediate death or serious physical injury" (emphasis supplied). On the basis of complainant's testimony that defendant threatened to slit her throat, the jury could have found beyond a reasonable doubt that defendant subjected complainant to sexual contact by "forcible compulsion" under either

definition of that term (see *People v Connor,* 126 NY 278). This result is not changed because the jury found defendant not guilty of assault in the third degree. One commits assault in the third degree when "[W]ith intent to cause physical injury to another person, *he causes such injury to such person"* (Penal Law, § 120.00, subd 1). (Emphasis supplied.) Subdivision 9 of section 10.00 of the Penal Law states that " 'Physical injury' means impairment of physical condition or substantial pain". The jury could have concluded that the physical force used against complainant overcame her "earnest resistance" or was such a threat that it placed complainant "in fear of immediate death or serious physical injury", but that such force, in fact, did not impair her physical condition or cause her substantial pain.

■ Since defendant was previously convicted in Alaska of the crimes of assault with a dangerous weapon and rape, crimes for which a sentence in excess of one year could be imposed in New York State (Penal Law, § 70.06, subd 1), he was properly sentenced as a second felony offender *(People v Parker,* 41 NY2d 21).

■■ Lastly, we turn to the most troublesome of defendant's contentions, i.e., that it was reversible error for the People to inquire during cross-examination of the defendant as to four prior incidents (bad acts) similar to the sexual abuse charge. While it is true, as defendant argues, that this court may reverse a conviction as a matter of discretion in the interests of justice where a cross-examination deprives a defendant of a fair trial (CPL 470.15, subd 3, par [c]; *People v Robinson,* 36 NY2d 224, 228-229), even where, as here, defense counsel failed to object to the cross-examination, this discretionary right must be cautiously exercised to insure against the substitution of appellate advocacy for trial strategy. Here, the defendant's attorney made a pretrial motion to suppress a 1965 assault and rape conviction in the State of Alaska *(People v Sandoval,* 34 NY2d 371). The court granted the motion. At the same time, defendant's attorney, orally contending that he was unaware of any other criminal, vicious or immoral acts committed by the defendant, moved for an order directing the People to inform the defendant of any previous criminal, vicious or immoral acts which they intended to use in cross-examination if defendant should take the stand. The prosecution refused to divulge the information and the court denied the motion, except that it directed that defendant be

provided with his arrest record, the so-called "rap" sheet (see *Matter of Legal Aid Soc. of Suffolk County v Mallon,* 47 AD2d 646). We conclude that the prosecution was under no duty to open its file to the defendant in the absence of any particularization in defendant's oral motion for information concerning prior "bad acts". This court, citing *People v Duffy* (36 NY2d 258, 263) and *People v Sandoval (supra),* stated in *People v Poole* (52 AD2d 1010, 1011) that "[T]he burden was upon the defendant to inform the court of the prior misconduct which might unfairly affect him as a witness in his own behalf." The defendant had a right under the *Sandoval* ruling to a pretrial determination of the propriety of the use by the prosecution on cross-examination of all of his prior "bad acts" which he chose to inform the court about. He was successful in removing from the case the 1965 conviction of assault and rape because he identified it and proved its prejudicial consequence if used at trial. For whatever reason, he chose not to identify the four other prior "bad acts" and cannot now be heard to complain, particularly since he did not object to their use at trial.

The judgment should be affirmed.

KANE, J. (concurring). Although I agree with the majority, the position adopted by the dissent warrants some further comment. In cross-examining a defendant about former misdeeds, a prosecutor must always act in good faith and possess a reasonable basis in fact for believing that the accused had engaged in such misconduct. A defendant may question whether the inquiry rests on a legitimate foundation and, if he does, trial courts properly should interrupt the proceedings to resolve the issue (e.g., *People v Kass,* 25 NY2d 123; *People v Alamo,* 23 NY2d 630). While a defendant has an opportunity to seek the suppression of certain materials in advance of trial by way of a *Sandoval* motion, it has never been suggested that this procedure constitutes an exclusive remedy precluding an initial or further attack on the scope of cross-examination at trial. Defendant was indeed entitled to be heard on the propriety of the prosecutor's questions, and he undoubtedly would have received consideration of the matter in the absence of the jury had he but asked for some relief. The trial court could not possibly have anticipated those questions or the defendant's responses thereto. Nevertheless, the dissent would cast an affirmative burden on the trial court to halt the cross-examination at some unspecified point and satisfy itself

that proper bounds are not exceeded. In an extreme case the trial court should intervene to prevent a defendant from being deprived of a fair trial, but this plainly is not such a case and there is no claim here that defense counsel was incompetent to protect the interests of his client. Defendant possessed a means both before and during trial to insure that he would only be subject to proper questions on cross-examination. He simply failed to take meaningful advantage of these procedures on either occasion. Even if he was ignorant of such topics at the pretrial stage, there is no good reason to suppose that the prosecutor lacked the requisite good faith or factual support for proceeding as he did and there is even less reason to foist the responsibility for raising such issues onto the trial court.

MIKOLL, J. (dissenting). The defendant was found guilty of sexual abuse in the first degree. Preceding the trial, a *Sandoval* hearing was conducted. A prior conviction for assault with a dangerous weapon and rape, occurring 11 years prior to the trial, was ordered suppressed and the prosecution was instructed that the defendant could not be cross-examined with respect to this conviction.

Defense counsel then stated that he was unaware of any other vicious immoral and criminal acts and requested the District Attorney to state whether there were any he intended to confront the defendant with and requested that the District Attorney divulge them so that the court could rule on them. The District Attorney declined to do so and the court declined to order him to state them on the record.

Subsequently, the defendant took the stand and the following colloquy took place:

By Mr. Mendleson:

"Q. Mr. Travison, I'm going to ask you whether or not upon October 23rd, 1961, at about 9:45 p.m. whether or not at that time you put a knife to the throat—

"Mr. Cheeseman: Pardon me. The date?

"The Court: October 23, 1961.

By Mr. Mendleson:

"Q. * * * you put a knife to the throat of Roberta Ward at the 600 block of Sixth Avenue in Fairbanks, Alaska?

"Mr. Cheeseman: Pardon me. May we approach the bench, Judge?

"The Court: Yes"

(Discussion at bench with Mr. Mendleson and Mr. Cheeseman.)

"The Court: All right. Mr. Mendleson.

By Mr. Mendleson:

"Q. Sir, start at the beginning. Did you on October 23rd, 1961 at 9:45 p.m. put a knife to the throat of Roberta Ward in the 600 block of Sixth Avenue, Fairbanks, Alaska?

"A. No, I didn't.

"Q. * * * and pull her into the new Firehouse Apartment Building and bind her hands and fondle her privates?

"A. No, I didn't.

"Q. Did you on November 4th, 1961, at 9:00 o'clock p.m. in an alley between Hilton Street and Noble Street, Fairbanks, Alaska, grab Mrs. Lou Roberts from behind and drag her to a tent at the rear of 1430 Hilton Street, Fairbanks, Alaska and threaten to kill her with a knife?

"A. No, I didn't.

"Q. Did you, on November 20, 1961, at Apartment No. 5-A, Anderson Apartments, grab Mrs. Linda Hall with your hands around the neck and throat and threaten to kill her, pull her to a bed, force her to remove her blouse and brassiere and attempt to kiss her and touch the intimate parts of body?

"A. No, I didn't.

"Q. Did you on February 6th, 1962 at Barry's Trailer Court (phonetic) in Fairbanks, Alaska, threaten to kill Linda Niemi (phonetic) with a knife and assault and attempt to rape her?

"A. No, I didn't."

The proceedings at the bar were never placed on the record. The questions were asked and denied by the defendant. No objections by defense counsel appear on the record. In view of the request to be heard on any prior acts of misconduct that defense was unaware of, already made at the *Sandoval* hearing, the defendant was entitled to be heard on the relevancy, competency and materiality of these questions. The matter should have been heard and ruled on in the absence of the jury in view of the highly prejudicial nature of these questions. Under these circumstances, this issue was adequately preserved for appellate review.

The questions involved acts very closely related to the facts of the indictment for which the defendant was standing trial.

Each question related to a series of events which predated the occurrences underlying the indictment by 11 and 12 years. It is interesting to note that the trial court in the *Sandoval* hearing suppressed use of a rape and an assault with a dangerous weapon conviction of the same vintage. These circumstances mandated an inquiry into the good faith of the prosecutor and whether he had a reasonable basis to make these inquiries *(People v Duffy,* 36 NY2d 258).

Although the nature and extent of cross-examination lies within the sound discretion of a Trial Judge, such discretion cannot be abused. The Court of Appeals stated in *People v Sandoval* (34 NY2d 371, 375): " 'The rules governing the admissibility of evidence of other crimes represent a balance between the probative value of such proof and the danger of prejudice which it presents to an accused. When evidence of other crimes has no purpose other than to show that a defendant is of a criminal bent or character and thus likely to have committed the crime charged, it should be excluded.' "

A prior criminal act, though it may be relevant to the credibility, veracity and honesty of a defendant, should be excluded if it is so highly prejudicial that it denies the defendant a fair trial. In *Sandoval,* the Court of Appeals suggested several guidelines to be followed: (1) whether the act bears logically and reasonably on the issue of credibility; (2) the question of lapse of time; (3) the prejudicial nature of the act because of its similarity to the crime charged; (4) willingness and disposition of a defendant voluntarily to place the advancement of his individual self-interest ahead of principle and interests of society; (5) acts of individual dishonesty such as fraud, bribery, etc., as opposed to acts involving addiction or isolated acts of violence.

*People v Poole* (52 AD2d 1010) is not controlling in this case. Although this court in the *Poole* case *(supra)* stated that a defendant has the duty to come forward and state any prior acts of misconduct he wishes the court to rule on before he decides whether to testify, he certainly should be heard under circumstances such as prevailed in this case. The defendant alleged through counsel he knew of no other immoral, vicious and criminal acts. Further, he denied the misdeeds the District Attorney confronted him with. In view of both a denial of such acts and his averment that he knew of no other acts, a preliminary inquiry was indicated to verify whether the prosecutor was proceeding on good faith, and a reasonable basis

before a decision could be made on the admissibility of these questions. If the good faith and reasonable basis of the prosecutor had been inquired into on the record, the court would have been in a position to make an appropriate ruling.

The matter should be remitted for a new trial in the interest of justice.

SWEENEY, J. P., and MAIN, J., concur with MAHONEY, J.; KANE, J., concurs in a separate opinion; MIKOLL, J., dissents and votes to remit in an opinion.

Judgment affirmed.