OPINION OF THE COURT
Carol H. Arber, J.
On the morning of February 17, 1984, Police Officers Killeen and Chokowski of the warrant squad were in search of Leroy Bundy who was the subject of a Family Court arrest warrant. Instead they arrested his mother Mary Bowens, the defendant in this case, on a charge of criminal possession of a weapon (in violation of Penal Law § 265.01) and she moved to suppress both the evidence seized from her home and the statements she made.
During the hearing held from October 30-November 1, 1984, Officer Killeen testified that the arrest warrant for Leroy Bundy indicated his address as 302 West 144 Street. When the officers went there and made inquiries they ascertained that Leroy Bundy no longer lived there, and were informed (it is not clear what the source of information was) that he had moved to 2103 Amsterdam Avenue.
At 8:20 a.m. the officers arrived at 2103 Amsterdam and went to apartment 4A (defendant’s apartment) in search of Mr. Bundy. The officers rang the bell and heard noises in the apartment. However, they waited for 15 minutes before the door was opened. When they entered the apartment, the officers went *461 in separate directions. Officer Killeen entered defendant Bow-ens’ bedroom where he saw a gun on the shelf of an open closet. While this occurred, the other officer located the subject of the warrant in another room. Meanwhile, Officer Killeen asked defendant Bowens if there were other guns in the apartment. In response to this question, defendant Bowens led the officer to a second closet and indicated the presence of another gun under a towel. She allegedly stated that the guns belonged to her boyfriend. At that point defendant was placed under arrest.
The issue raised during the hearing was whether this search, conducted pursuant to an arrest warrant for defendant’s son violated defendant’s constitutional rights.
DISCUSSION
No discussion of 4th Amendment issues is complete without expressing the underlying assumptions that the authors of our Constitution considered so fundamental — the recognition and protection for the individual’s “expectation of privacy in his own home” (NY Const, art I, § 12; US Const 4th, 14th amends; People v Knapp, 52 NY2d 689).
With that as background, the first issue to be addressed here is whether the law distinguishes between an arrest warrant and a search warrant and the cases clearly indicate that there is such a distinction drawn not only by the courts but also by the Legislature.
Arrest warrants are governed by CPL article 120 and search warrants are governed by CPL article 690.
The limitations on arrest warrants arise not only from the statutory basis in New York, but arise as well out of the case law that has developed. In Steagald v United States (451 US 204), the Supreme Court considered the issue of an arrest warrant under circumstances that are sufficiently similar to warrant comparison. In that case agents had a warrant authorizing the arrest of X. The agents entered the home of Y (Steagald) to search for X and arrested Y based on evidence uncovered during that search. The court phrased the issue as “whether an arrest warrant — as opposed to a search warrant — is adequate to protect the Fourth Amendment interests of persons not named in the warrant, when their homes are searched without their consent and in the absence of exigent circumstances” (supra, at p 212). The court found that the interests protected by the two warrants differ: an arrest warrant is issued by a court upon a showing that the individual named has committed an offense. In contrast, a search warrant is issued upon probable cause to *462 believe that the objective of the warrant is located in a particular place.
In this case the question is whether the search of defendant’s home conducted by the police officers in attempting to execute an arrest warrant for Leroy Bundy was within the purview of the arrest warrant. The warrant was issued to effectuate the arrest of Leroy Bundy at the address indicated on the warrant which was not the defendant’s address. At the hearing the officer stated that they went to the address on the warrant and were informed that Leroy Bundy no longer resided there; in addition, they were informed that he lived at defendant’s address. The officers did not testify either as to the source of the information or their basis for believing they could locate Leroy Bundy at defendant’s address. Nor was any reason given for their failure to return to court so that the warrant could be revised based on the new information they received.
Thus, as the court observed in Steagald (supra, at p 213), the officers “relied on the warrant as legal authority to enter the home of a third person” based on “some information” that Leroy Bundy would be there: “Regardless of how reasonable this belief might have been, it was never subjected to the detached scrutiny of a judicial officer * * * petitioner’s only protection from an illegal entry and search was the agent’s personal determination of probable cause.”
Since the warrant here was not to search a home, and in addition it was an arrest warrant for someone other than defendant, the search was a warrantless one and as such falls within the ruling in the Steagald case (supra) where such a search was found to violate the 4th Amendment rights of the defendant.
The People argue that although this search was without a warrant it falls within either one of two exceptions: exigent circumstances or plain view. What are the exigent circumstances here? The People argue that the officers’ observation of a gun on a shelf in the closet presents an “exigent circumstance.” The testimony at the hearing, however, tends to belie that argument.
When Officer Killeen entered defendant’s bedroom, she was dressing and was not engaged in any conduct that would lead him to believe that she intended to remove the gun from the closet in an effort to use it. The gun, which the officer observed on a shelf in what he claimed was an open closet, was not used nor was its use threatened. In fact, when the officer questioned defendant about the gun she was forthcoming in her responses. First she told him that another one was in the apartment and *463 next she told him that they belonged to her boyfriend. None of these facts indicate anything approaching “exigent circumstances.”
The People also contend that defendant “consented” to the search of her apartment, so that the lack of warrant is irrelevant. The facts, however, do not appear to support this interpretation. The officers testified that after obtaining defendant’s address and apartment number, they rang the doorbell at 8:20 a.m. They heard noise within but no one opened the door for about 15 minutes. It is not clear whether the officers continued to ring the bell, or said anything else to induce someone to open the door. But when someone opened the door, they said that Leroy Bundy was not there. The officers then entered to search.
It defies credulity to believe that the acts of the defendant constitute consent. It is clear that she was in fear and under those circumstances, allowing the officers to enter does not amount to consent (People v Gonzalez, 39 NY2d 122). In Gonzalez (at p 124), the court stated that consent to search must be “a free and unconstrained choice” and it is clear that defendant’s responses to the officers were neither free nor unconstrained. The same logic applies to the statements made by defendant respecting the location of the second gun and where the guns came from. The defendant had two police officers in her home, one searching her bedroom and the other searching for her son in the apartment. The atmosphere can hardly be described as unconstrained and on that basis the statements made and the second gun must be suppressed.
With respect to the first gun, in addition to exigent circumstances, the People urge what they refer to as the “plain view” doctrine (People v Brosnan, 32 NY2d 254). However, the search in that case was conducted pursuant to an investigation and was of a truck and not a home.
Courts have been careful to protect the rights of citizens to privacy in their own homes. As the Court of Appeals has stated: “Thf goal is not to protect criminals but to protect the standards of decency in our society. The privacy of an innocent citizen, of necessity, must be judged by the same standards as those applied to citizens who later are found to be guilty.” (People v Spinelli, 35 NY2d 77, 82.)
In People v Levan (62 NY2d 139), the Court of Appeals reversed a conviction where police officers investigating a murder entered the defendant’s home once defendant had opened the door to a neighbor. The court found that because there was no warrant, no consent and no showing of exigent circumstances *464 the evidence seized must be suppressed: “The police had neither a warrant nor consent to enter defendant’s apartment. There was an affirmed finding that no exigent circumstances existed; the police themselves cannot by their own conduct create an appearance of exigency.” (Supra, at p 146.)
Much the same applies in this case. The police had an arrest warrant, not a search warrant. When they finally gained entrance to the apartment it was by intimidation and not by consent; and finally the only “exigent circumstances” were that the officer observed a gun on a shelf in a closet.
Since the People have not established either exigent circumstances or consent, the first gun must also be suppressed.
This case was on for decision on January 22, 1985. At that time, this court indicated that the motion would be granted and this decision would follow. The Assistant District Attorney then moved to dismiss the case and that motion was granted by Judge White.