THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILFRED ROOPCHAND, Appellant.

Second Department, February 19, 1985

**APPEARANCES OF COUNSEL**

*William E. Hellerstein* (*Robin Nichinsky* of counsel), for appellant.

*John J. Santucci, District Attorney* (*Merri Turk Lasky* of counsel), for respondent.

OPINION OF THE COURT

Per Curiam.

█ The core question dividing us is whether the trial prosecutor's remarks in summation, which were patently improper and which we unequivocally condemn, entitle the defendant to a new trial. A review of the record convinces the majority of us that reversal is not warranted.

Reversal for prosecutorial misconduct " 'is properly shunned when the misconduct has not substantially prejudiced a defendant's trial. Reversal is an ill-suited remedy for prosecutorial misconduct; it does not affect the prosecutor directly, but rather imposes upon society the cost of retrying an individual who was fairly convicted' " (*People v Galloway,* 54 NY2d 396, 401, quoting *United States v Modica,* 663 F2d 1173, 1184, *cert denied* 456 US 989; *see also, People v Keppler,* 92 AD2d 1032). Thus, the appropriate question is whether the misconduct deprived the defendant of a fair trial (*see, e.g., People v Hopkins,* 58 NY2d 1079, 1083; *People v Lowen,* 100 AD2d 518, 520; *People v Tayeh,* 96 AD2d 1045, 1047; *cf. People v Cruz,* 98 AD2d 726; *People v Stewart,* 92 AD2d 226). "The rule is that an improper summation, at least when the objectionable parts consist largely of abusive and intemperate language as here, should be assessed for its prejudicial effect, and it requires greater impropriety to produce that effect in a stronger case" (*People v Brosnan,* 32 NY2d 254, 262; *see also, United States v Johns,* 734 F2d 657, 661-662; *United States v Weatherless,* 734 F2d 179, 181-182, *cert denied __ US __,* 105 S Ct 595).

As in *Brosnan,* "[i]n this case, it is at most only arguable that the prosecutor's misconduct could have produced a greater adverse effect on the jury than did the bizarre facts of the crime, and the overwhelming evidence of culpability" (*People v Brosnan, supra,* p 262). The victim positively identified the defendant as her assailant at the time of his arrest, some 25 to 30 minutes subsequent to the crime. At that time, defendant's pants were ripped and his legs were bleeding, a condition consistent with having been dragged in circles by a car, as the victim testified had occurred. He almost perfectly matched the description given to the police moments after the incident. The alibi testimony was totally unpersuasive and, indeed, based upon the alibi witness' time approximation it appears that he saw the defendant *after* the crime had been committed. Hence, the prosecutor's unwarranted comments do not taint the conviction (*People v Galloway,* 54 NY2d 396, 401, *supra; People v Harris,* 107 AD2d 761; *accord, United States v Johns, supra; United States v*

*Weatherless, supra; United States v Bosby,* 675 F2d 1174, 1185; *United States v Karas,* 624 F2d 500, 506, *cert denied* 449 US 1078).

When prosecutorial misconduct has occurred, we may employ sanctions other than reversal to insure nonrepetition. We can, for example, condemn the prosecutor publicly, direct the commencement of disciplinary proceedings and preclude the prosecutor from making court appearances for a specified period of time (*cf. United States v Modica,* 663 F2d 1173, *supra*). Such an approach is far more appropriate when a defendant has been fairly convicted, as the direction for a new trial operates to punish the victim and the witnesses through additional inconvenience and expense (*cf. United States v Hasting,* 461 US 499, 506-507; *Morris v Slappy,* 461 US 1, 14-15).

At this juncture, we are not inclined to impose any direct sanction against the offending prosecutor other than to warn him that any future infractions may lead to disciplinary action and that we expect the District Attorney of Queens County to issue an appropriate internal admonition. We remind District Attorneys that they have a continuing obligation to clearly and firmly instruct their trial assistants to refrain from using improper tactics and, through periodic observation, to assure that these instructions are adhered to. Trial judges who experience difficulties with assistants appearing before them should have no hesitancy in bringing the matter to the attention of the District Attorney.

■ Defendant's complaint that the People introduced into evidence a statement he made without giving the notice specified by CPL 710.30 also does not constitute reversible error. First, it is not at all clear that such notice was required. It appears that the People did not intend to elicit the statement and it was volunteered by the police officer (*see, People v Webb,* 97 AD2d 779). Moreover, the statement was made in a noncustodial, noncoerced environment and was plainly voluntary (*People v Travison,* 46 NY2d 758, *affg* 59 AD2d 404, 407, *cert denied* 441 US 949; *People v Pray,* 99 AD2d 915, 916; *People v Balschweit,* 91 AD2d 1127; *cf. People v Burnett,* 99 AD2d 786). In any event, the statement added little to the People's case and its admission, if error, was harmless (*People v Johnson,* 54 AD2d 586; *People v Edwards,* 51 AD2d 807).

Nor did the court marshal the evidence unfairly (*see, People v Culhane,* 45 NY2d 757, *cert denied* 439 US 1047; *People v Little,* 98 AD2d 752, *affd* 62 NY2d 1020; *People v Harris,* 69 AD2d 843). The court gave appropriate instructions and accurately summarized the testimony of all three witnesses.

■ Finally, we would note that even if there were merit in defendant's arguments, we would not dismiss the indictment even though we are told that he has served his sentence. Defendant's claims all relate to asserted trial errors and in such circumstances the Criminal Procedure Law specifies that the appropriate corrective action is the direction for a new trial (CPL 470.20 [1]; *People v Allen,* 39 NY2d 916; *but cf. People v Sutton,* 98 AD2d 785; *People v Fondal,* 64 AD2d 638).

While dismissal may be warranted where the charges "involved relatively minor crimes" (*People v Burwell,* 53 NY2d 849, 851; *cf. Matter of Ernesto M.,* 65 AD2d 800), in this case the conviction is for a felony "and for penological purposes it is relevant whether defendant committed the crime" (*People v Allen, supra,* p 918). Should defendant ever commit another felony, it is important that the court be able to impose an enhanced sentence.

Accordingly, the judgment should be affirmed.

GIBBONS, J. (dissenting). On January 3, 1980, at approximately 12:30 A.M., the complainant herein, Janice Ghignon, was stopped at a red light in Queens County when she was approached by a man who told her that her rear license plate was missing. Initially unmoved by this information, Mrs. Ghignon apparently changed her mind and got out of her car, leaving the engine running. At this point, the man stepped forward and told her that he was going to take her car. The complainant resisted, and when the man pushed her, she pushed back, knocking the man off balance. Mrs. Ghignon then got back into the car, locked the door and started to close the electric window. Her assailant then placed a hand in his pocket claiming to have a gun. He produced no gun, however, and as the complainant attempted to drive away, he put his hand into the window opening and apparently got it caught. As the complainant drove away, she saw her assailant hanging onto the side of the car, whereupon she drove in circles until he fell off. Moments later, she returned to the scene of the crime and gave the police a description of the perpetrator, which was apparently broadcast to other police units. A suspect was thereafter apprehended several blocks away, and when she arrived at the scene, Mrs. Ghignon identified the defendant as her assailant. Insofar as is here pertinent, it is undisputed that the defendant's pants were ripped at the knees when he was apprehended, and that he was bleeding.

Testimony to this effect was introduced at the trial, as was a statement by one of the arresting officers to the effect that when he confronted the defendant and asked him about the injury to

his knees, the latter responded "that he had been in a fight or an argument with somebody a couple of months ago, which gave no basis for the fact that his knees were still bleeding". No notice of the existence of this incriminating statement had been given to the defendant pursuant to CPL 710.30 (1), and upon its receipt into evidence, defense counsel promptly objected and requested an immediate *Huntley* hearing (*see, People v Huntley,* 15 NY2d 72). The objection was overruled and the request denied. Defendant was subsequently convicted of attempted robbery in the third degree, and this appeal followed.

I would reverse and remit the matter for a new trial.

Assuming without deciding that there exists overwhelming evidence of the defendant's guilt, it is nevertheless my belief that the level of prosecutorial misconduct which was committed in this case during summation operated to deprive this defendant of his constitutional right to a fair trial. As the Court of Appeals noted in *People v Crimmins* (36 NY2d 230, 238): "The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right" (*see, People v Stewart,* 92 AD2d 226, 231; *cf. People v Sanchez,* 61 NY2d 1022, 1024; *People v Hopkins,* 58 NY2d 1079; *People v Galloway,* 54 NY2d 396).

Apparently not content to permit this case to be decided upon its merits, the prosecutor herein embarked upon a deliberate course of conduct designed to elicit sympathy for the complainant and to arouse the animosity and ire of the jury regarding the defendant, by commencing his summation with the gratuitous observation that it is "tough * * * to be a victim of crime today in Queens County". Continually peppering his ensuing remarks with references to the "terror" experienced by Mrs. Ghignon, a "wife [and] mother of three * * * who [had] to go to work from 3:30 in the afternoon until about midnight * * * to help support her family", the prosecuting attorney then made a concerted effort to convince the jury, over objection, that the complainant's life had been placed in mortal danger by the defendant's actions, thus changing the tenor of the prosecution from one involving the attempted theft of an automobile to one involving an aborted felony murder.

"This woman, I submit, based on the evidence, has had her life placed in jeopardy, on her way home from work in the early morning hours of January 3rd.

"Now, I ask you: Is she not entitled, as you would be, or your forelady, or any of the other members of the jury, to go home from work unaccosted at that hour of the night? Must she fend

off Wilfred Roopchand at that time? With his demand that she turn over her automobile to him? With his threats to use a gun against her? With his shoving her so he can gain access to her automobile * * *

"This is a woman who is terrified, I submit, terrorized about what is going on. She could not know whether or not she would be alive five minutes from now, whether or not her husband would be a widower, whether or not her children would go motherless * * *

"I submit, based on the evidence, this woman was in terror * * *

"God knows what Roopchand would have done if he had gotten his hands on her * * *

"[Y]ou may imagine what it is like to experience dread fear of losing your life, imminently, fear of not being here".
At this point, the court apparently admonished the prosecutor regarding the inflammatory nature of his summation at a side-bar conference, and the onslaught ceased. No curative instructions were delivered to the jury, however.

The foregoing series of comments, suggesting, as they do, that the defendant might well have murdered the complainant had he been afforded the opportunity, were clearly irrelevant to the only *real* issue in the case, i.e., the identity of the prospective car thief, as there was no dispute at trial regarding the nature of the underlying criminal acts. Accordingly, the sole and intended effect of the untoward remarks permitted by the court could only have been to divert the jurors' attention both from that limited issue and a careful consideration of the defendant's alibi defense, and to prompt the jury to regard the prosecution's evidence in a more favorable manner, based on prejudice, passion, bias, and the like. At sentencing, the court did belatedly observe that it appeared highly unlikely that the defendant had ever intended to kill the complainant, but this observation came far too late to aid the defendant or to undo the damage which had already been caused by the prosecutor's improper and highly inflammatory remarks.

Since the summation, when viewed as a whole, was so deliberately infused with extraneous, inflammatory, outrageous and inappropriate speculation on the part of the prosecution regarding the defendant's supposed intent to seriously injure the complainant, I am forced to conclude that its over-all effect upon the jury was to convert the proceeding into a twentieth century "witch hunt" at which the jury was encouraged to convict the defendant based on pure speculation and their own subjective

fears, rather than the objective facts in evidence. In my view, the consequent denial of the defendant's right to a fair trial mandates a reversal (*see, People v Crimmins, supra; People v Stewart, supra; cf. People v Brosnan,* 32 NY2d 254).

In addition, it was error to admit into evidence the officer's testimony regarding the defendant's explanation of the injury to his knees, without affording the defendant a reasonable opportunity to move for the suppression of same (CPL 710.30 [2]). In the absence of good cause shown and a reasonable opportunity to be heard during trial on the suppression issue, it is error to admit into evidence, over objection, trial testimony regarding an incriminating statement allegedly made by a defendant in violation of his *Miranda* rights and as to which he has never been given the requisite pretrial notice (*People v Greer,* 42 NY2d 170; CPL 710.30; *cf. People v Pray,* 99 AD2d 915; *People v Burnett,* 99 AD2d 786; *People v Webb,* 97 AD2d 779; *People v Travison,* 59 AD2d 404, *affd* 46 NY2d 758, *cert denied* 441 US 949).

For the foregoing reasons, I would reverse the judgment and remit the matter for a new trial.

Titone, J. P., Bracken and NIEHOFF, JJ., concur; GIBBONS, J., dissents and votes to reverse the judgment appealed from and to order a new trial, in an opinion in which BROWN, J., concurs.

Judgment of the Supreme Court, Queens County, rendered August 12, 1980, affirmed.