(August 18, 1988)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MIGUEL TORRES, Appellant.—Judgment, Supreme Court, New York County (Jay Gold, J.), rendered on September 3, 1986, affirmed. Rosenberger, J., concurs in a memorandum in which Sandler and Carro, JJ., concur; Smith, J., concurs in a separate memorandum in which Carro and Rosenberger, JJ., concur; and Murphy, P. J., dissents in a memorandum, all as follows:

Smith, J. (concurring). At the hearing on the motion to suppress the gun, Detective Christopher Turner was the only witness for the People and the only person who testified to the facts of the stop and the arrest. Defendant testified in his own behalf but his testimony was limited to the statement that the gun was inside of a black bag which was inside of an army bag.

On October 25, 1985, the 25th Precinct received a call from an anonymous male that a man named "Poppo", who was wanted for murder, was getting a haircut in a barber shop on 116th Street and Third Avenue in Manhattan, New York City. The man was described as Hispanic, large, wearing a white sweater, carrying a shoulder bag and driving a black Eldorado Cadillac car. Detective Turner testified that he believed the caller stated that the gun was in the bag. Detective Turner could not remember if he had personally taken the call.

On October 25, 1985 around 11:00 A.M., Detective Turner and his partner proceeded in plain clothes in an unmarked

car to the area of 116th Street and Third Avenue. They went to the barber shop but did not see the defendant. They saw the black Cadillac in front of the barber shop. The two officers walked away and then turned around to come back. Detective Turner saw defendant and another man exit the barber shop and walk directly to the Cadillac. Defendant was wearing a bulky white knit sweater and dungarees and was carrying a shoulder bag. The second man was Hispanic, about 5-feet, 6-inches tall and had a thin build.

The two policemen approached the defendant and his companion with their guns drawn. The officers identified themselves. The defendant, who was in the driver's seat, and his companion were ordered out of the car. Detective Turner frisked the passenger. The other officer frisked the defendant. Nothing was found on either man. Detective Turner reached into the front seat and picked up the shoulder bag. He noted the weight and felt the outline of a gun. He unzipped the bag and found a gun, a 5-shot, 3-inch Rossi revolver. It contained five live rounds of ammunition. The defendant was arrested.

The issue here is the action taken by the police following an anonymous phone call in which a specifically described person was alleged to have a gun. Certainly, in this case the police had a common-law duty to inquire based upon reasonable suspicion that criminal activity was afoot. *(People v De Bour,* 40 NY2d 210, 223 [1976].)* Here, in addition to the stop, without a word and without any action by the defendant which suggested criminal activity, the police proceeded to frisk the defendant and his companion and to remove the bag from the car. While the immediate frisk may not have been permissible given the facts, including that there was no showing that the caller was reliable or the source of his information *(see, People v Elwell,* 50 NY2d 231 [1980]; *People v Bond,* 116 AD2d 28 [1986])*, it was reasonable for the police officer to remove the bag from the car for his own protection. *(People v Brooks,* 65 NY2d 1021 [1985]; *see, People v McLaurin,* 43 NY2d 902 [1978].)* Since the bag was heavy and the officer felt the outline of a gun, the probable cause for an arrest was established.

Rosenberger, J. (concurring). I concur in the result reached in Justice Smith's memorandum. I would go further, however, to find that the frisk of the defendant was also permissible, despite its being based on an anonymous tip, since the officers' independent observations corroborated in the information received, both as to the specific description of the suspect and as to the exact location where he could be found. *(People v*

*Salaman,* 71 NY2d 869 [1988].) Since the frisk of the defendant was valid, so too was the touching of the shoulder bag which was ultimately found to contain the loaded revolver. *(People v Brooks,* 65 NY2d 1021 [1985].)

Murphy, P. J. (dissenting). The facts are accurately stated in Justice Smith's memorandum.

It is not disputed that the only factual predicate for the police action which took place in this case was that supplied by an anonymous phone informant. Although some details of the tip were confirmed when the police spotted a person matching the description given by the informant in the location specified by the informant, it may be debated whether the ensuing police action, i.e., confronting the suspect with guns drawn, ordering him out of the car and frisking him and his companion without any prior inquiry, was reasonable. *(See, e.g., People v Elwell,* 50 NY2d 231; *People v Bond,* 116 AD2d 28; *People v Russ,* 61 NY2d 693.)

What seems less debatable, however, is that after the defendant and his companion had been removed from the car and had been frisked at gunpoint without the discovery of any weapons or other objectionable items, there existed no predicate for a wider search. The officers' immediate safety was adequately assured by the frisk; it cannot be realistically maintained that two armed police officers were significantly endangered by two unarmed and, as the record indicates, cooperative, suspects. If the officers were concerned that there may have been a gun concealed within the closed bag in the car's front seat, the reasonable course would have been to remove the suspects from the general vicinity of the car to a place where inquiry might have been pursued without apprehension. The suspects were, however, neither moved to a spot more distant from the car nor inquired of, even as might have been expected to verify details of the tip such as whether defendant was in fact the person known as "Poppo". Rather, the closed bag in the car was searched directly.

It is now urged that this search was justified by safety considerations since it is uncritically accepted that the bag was within "grabbable" reach. But, manifestly, the suspects having been removed from the car, the closed bag and its contents still within the car were not within grabbable reach. Indeed, the Court of Appeals in circumstances precisely resembling those at bar refused to find that an item left within a car after the suspect's removal therefrom was within grabbable reach and therefore properly subject to search for the

officer's protection. In analysis instructive in the present matter then Chief Judge Cooke writing for the court stated:

"One such exception [to the requirement of a warrant] is the search incident to arrest, the classic statement of which is in *Chimel v California* (395 US 752 * * *). It is grounded in protecting the safety of the arresting officer by permitting him to search for and seize weapons when there is reason to fear for his safety and in preventing the person arrested from destroying evidence of criminal involvement by permitting the arresting officer to search for and seize such evidence.

"Until the Supreme Court's decision in the instant case, the search has been limited both temporally and geographically, a search being upheld only when it closely follows arrest and is of the person of the individual arrested and the area within his immediate reach (the 'grabbable' area). *In extending Chimel to the facts of this case, in which defendant's jacket was neither on his person nor within his reach (he being outside the vehicle and the jacket being inside with its pocket zippered), the Supreme Court has departed from the rationale in Chimel. Once the exception is employed to justify a warrantless search for objects outside an arrested person's reach it no longer has any distinct spatial boundary. As Judge WACHTLER, dissenting in People v Brosnan (32 NY2d 254, 267), put it, 'search and seizure law [becomes] uncontrollable when the rubric [is] adopted and the rationale discarded.' " (People v Belton, 55 NY2d 49, 52-53 [emphasis added].)*

It is conceded that there was no probable cause for the defendant's arrest. Indeed, as the majority notes it is at best questionable whether there was reasonable cause for the stop and frisk. In any case, even if there had been probable cause to arrest the defendant, as *Belton (supra)* makes clear there would have been no basis for a search of the bag left within the car under the search incident to arrest exception to the warrant requirement because the closed bag was not within the defendant's immediate reach. A fortiori, where as here there was at best a basis for a stop and frisk there was no possible safety rationale for the search which was conducted. Surely, it is not possible that an officer may incident to a stop and frisk conduct a more extensive search of the suspect and his surroundings than would be permitted in this State incident to a lawful arrest. That is, however, what the majority now holds. In so doing it severs the law of search and seizure from its underlying rationale and invites completely unwarranted and uncontrollable extensions of the "stop and frisk" doctrine.

Accordingly, the judgment of the Supreme Court, New York County (Jay Gold, J.), rendered September 3, 1986, convicting defendant of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]), and sentencing him to probation for five years should be reversed, the motion to suppress granted and the indictment dismissed.